## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **LUCINDA ABRAMS AND** | ) | |
| **JOSE ABRAMS** | ) | |
| | ) | |
| **V.** | ) | **CIVIL ACTION NO.:** 6:20-cv-232 |
| | ) | |
| **UNITED STATES OF AMERICA;** | ) | |
| **BAYLOR SCOTT & WHITE HEALTH;** | ) | |
| **U.S. RADIOLOGY ON-CALL, LLC** | ) | |
| **d/b/a U.S. RADIOLOGY and/or U.S.** | ) | |
| **RADIOLOGY ON-CALL; and** | ) | |
| **JEFFREY J. JAINDL, D.O.** | ) | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Lucinda Abrams and Jose Abrams, and file this Original Complaint against the United States of America, Baylor Scott & White Health, U.S. Radiology On-Call, LLC d/b/a U.S. Radiology and/or U. S. Radiology On-Call, and Jeffrey J. Jaindl, D.O. and, in support of their causes of action, respectfully show the Court the following:

## I.
## FEDERAL TORT CLAIMS ACT ACTION
## AGAINST THE UNITED STATES OF AMERICA

1.     This is a medical malpractice case brought against the United States of America under the Federal Tort Claims Act for severe and permanent injuries arising out of negligent acts and/or omissions of employees, agents, apparent agents, servants, or representatives of the United States while acting within the course and scope of their employment, agency, apparent agency, servitude, or representative capacity, under circumstances where the United States of America, if a private person, would be liable to the Plaintiffs under the laws of the State of Texas where the

acts and/or omissions occurred. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1346(b).

2.     At all times relevant to these matters, the employees, agents, apparent agents, servants or representatives of the United States were subject to the United States' right to control, including substantial supervision and direction over their day-to-day activities.

3.     The Plaintiffs, Lucinda Abrams and Jose Abrams, are individuals residing in Killeen, Bell County, Texas.

4.     At all times relevant to this Complaint, the Defendant, the United States of America, was the employer of health care providers who administered care and treatment to Lucinda Abrams while she was a patient at Darnall Army Medical Center.

5.     The United States of America is a Defendant.

6.     The United States of America may be served with process in accordance with Rule 4(i) of the Federal Rules of Civil Procedure by serving a copy of the Summons and Complaint on John Bash, United States Attorney for the Western District of Texas, and designated agent for service of process, at his office: United States Attorney's Office, ATTN: Civil Process Clerk, 601 N.W. Loop 410, Suite 600, San Antonio, Texas 78216. Service is also affected by serving a copy of the Summons and Complaint on William Barr, Attorney General for the United States of America, by certified mail, return receipt requested, at the Attorney General's Office, ATTN: Civil Process Clerk, U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, D.C. 20530-0001 and by serving a copy of the Summons on Gary M. Manuele, Office of Center Counsel, Medical Claims Attorney, by certified mail, return receipt requested, at the Department of the Army, Carl R. Darnall Army Medical Center, 36000 Darnall Loop, Fort Hood, Texas 76544.

7.      Venue is proper in the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 1391 (a)(1) and (c) as the United States is a Defendant and because all or part of the cause of action accrued in this District.

## II.
## LIABILITY OF THE UNITED STATES OF AMERICA

8.      This case is commenced and prosecuted against the United States of America pursuant to and in compliance with Title 28 U.S.C. §§ 2671-2680, commonly referred to as the "Federal Tort Claim Act."  Liability of the United States is predicated specifically on title 28 U.S.C. §§1346(b)(1) and 2674 because the personal injuries and resulting damages of which complaint is made were proximately caused by the negligence, wrongful acts and/or omissions of the employees of the United States at Darnall Army Medical Center, Fort Hood, Texas, while acting within the scope of their office or employment, under circumstances where the United States, if a private person, would be liable to the Plaintiffs in the same manner and to the same extent as a private individual under the laws of the State of Texas.

9.      The United States Army is an agency of the United States of America.  The United States of America, Defendant, through its agency, the United States Army, at all times material hereto, owned, operated, and controlled the health care facility known as Darnall Army Medical Center, and through its agency, the United States Army, staffed the health care facility with agents, servants, and/or employees.

## III.
## JURISDICTIONAL PREREQUISITES

10.      On October 17, 2018, Plaintiffs submitted an Administrative Claim on Form 95 to the appropriate claims officer in the Department of the Army, Fort Hood, Consolidated Claims Office, and Carl R. Darnall Army Medical Center.  The claim was acknowledged by the agency

on October 23, 2018.  As of this date, a letter of denial of said claim has not been received, more than six months have passed, and the Plaintiffs do hereby exercise their option to consider that their claim is denied.  Plaintiffs have complied with all jurisdictional prerequisites and conditions precedent to commencement and prosecution of this litigation.

**IV.**
**ACTION AGAINST BAYLOR SCOTT & WHITE HEALTH**

11.    This is a medical malpractice action brought against Baylor Scott & White Health pursuant to Chapter 74 of the Texas Civil Practices and Remedies Code for severe and permanent injuries arising out of the negligent acts and/or omissions of employees, agents, apparent agents, servants, or representatives of Baylor Scott & White Health while acting within the course and scope of  employment, agency, apparent agency, servitude, or representative capacity, for severe and permanent injuries arising out of their negligent acts or omissions.   This Court has supplemental original subject matter jurisdiction over Baylor Scott & White pursuant to title 28 U.S.C § 1367.

12.    Defendant, Baylor Scott and White Health, is a health care entity having a principal place of business in Temple, Bell County, Texas and may be served with process by personally serving its Registered Agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201, by certified mail, return receipt requested at that address.

13.    The Plaintiffs have complied with the notice of claim provisions pursuant to Chapter 74 of the Civil Practices and Remedies Code.  On September 9, 2019, the Plaintiffs gave Defendant Baylor Scott & White Health written notice of the claim by certified mail, return receipt requested as required by Chapter 74 of the Texas Civil Practices and Remedies Code.

14.    At all times relevant to this case, the doctors, nurses and/or other health care providers who were involved in the medical care of Lucinda Abrams were agents, employees, and/or

4

representatives of Baylor Scott & White Health acting in the course and scope of their agency and/or employment. Baylor Scott & White Health is vicariously liable for the acts and/or omissions of these health care providers pursuant to the doctrine of respondeat superior.

**V.**

**ACTION AGAINST U.S. RADIOLOGY ON-CALL, LLC**
**D/B/A U.S. RADIOLOGY AND/OR U.S. RADIOLOGY**
**ON-CALL AND JEFFREY JAINDL, D.O.**

15.     This is a medical malpractice action brought against U.S. Radiology On-Call, LLC d/b/a U. S. Radiology and/or U.S. Radiology On-Call ("U.S. Radiology") pursuant to Chapter 74 of the Texas Civil Practices and Remedies Code for severe and permanent injuries arising out of the negligent acts and/or omissions of employees, agents, apparent agents, servants, or representatives of U.S. Radiology, including Jeffrey J. Jaindl, D.O., while acting within the course and scope of  employment, agency, apparent agency, servitude, or representative capacity, and against Jeffrey J. Jaindl, D.O.  ("Dr. Jaindl"), Individually, for severe and permanent injuries arising out of his negligent acts and/or omissions.  This Court has supplemental original subject matter jurisdiction over U.S. Radiology and Dr. Jaindl, pursuant to title 28 U.S.C. § 1367 and 1332.

16.     Defendant U.S. Radiology On-Call, LLC d/b/a U. S. Radiology and/or U. S. Radiology On-Call is a limited liability company organized under the laws of the state of California.  Defendant U. S. Radiology On-Call, LLC d/b/a U.S. Radiology and/or U. S. Radiology On-Call may be served with process by serving its registered agent, California Corporate Agents, Inc. at 16830 Ventura Boulevard, Suite 360, Encino, California 91436 by certified mail, return received requested.

17.     Defendant Jeffrey J. Jaindl, D.O. is an individual residing in Greenville, South Carolina.  Defendant Jaindl may be served with process by serving him at 1210 W. Faris Road, Greenville, SC 29605-4444.

18.     The Plaintiffs have complied with the notice of claim provisions pursuant to Chapter 74 of the Civil Practices and Remedies Code.  On September 9, 2019, the Plaintiffs gave Defendants U. S. Radiology and Dr. Jaindl written notice of the claim by certified mail, return receipt requested as required by Chapter 74 of the Texas Civil Practices and Remedies Code.

## VI.
## BACKGROUND FACTS

19.     This is a medical malpractice case in which Lucinda Abrams suffered severe and permanent injury resulting in permanent paralysis when Darnall Army Medical Center and Baylor Scott & White Health failed to timely diagnose and treat a spinal infection that progressed and caused severe and permanent injury to her spinal cord.

20.     In March 2018, Lucinda Abrams was 58 years old and generally healthy.  She lived at home with her husband, Jose Abrams, U.S. Army Captain, Retired.  Lucinda and Jose Abrams have been married for approximately 40 years and have three children.

21.     On Monday, April 2, 2018, Lucinda Abrams went to Darnall Army Medical Center ("Darnall") at Fort Hood, Texas.  She and her husband reported a change in her mental status, weakness, difficulty walking, difficulty with urination, body aches, chest pain, cough, and congestion.  Mrs. Abrams reported that her pain intensity was 8/10 pain.  Mr. Abrams reported that Lucinda had been normal up until the day before and that she was usually alert with normal mobility.

22.     The Darnall medical providers diagnosed her with acute mental status change with confusion, acute urinary tract infection, and hypokalemia (low potassium level).

6

23.     On Wednesday, April 4, 2018, Mrs. Abrams followed up with her primary care provider at Darnall, Dr. Johnson.  Mrs. Abrams reported that the intensity of the pain between her shoulders was now 10/10.  The pain was burning, was constant, and was not relieved by pain medication.  Dr. Johnson's assessment was cervicalgia  with acute cervical/upper thoracic pain associated with limited range of motion.  Dr. Johnson concluded it was "most likely spasms" and prescribed pain medication, a muscle relaxer, and oral steroids.  Dr. Johnson noted a "possible need for imaging" but did not order any radiologic imaging.

24.     In the early morning hours on Thursday, April 5, 2018, Mrs. Abrams was taken to the Emergency Department at Darnall.  At approximately 4:22 a.m., Darnall medical providers noted that her extremities exhibited normal range of motion, and her "neuro status" was intact to the extremity.  At that time, her physical exam revealed no sensory or motor deficits.  She reported weakness, urinary retention, and muscle aches and pains.  Mrs. Abrams was admitted to Darnall Army Medical Center hospital under the care of the Darnall internal medicine service, Dr. Oppenlander and Dr. Rosekelly.  While transferring Mrs. Abrams to her hospital bed at 9:45 a.m., the Darnall nurses noted that Mrs. Abrams was unable to move her extremities.

25.     Dr. Rosekelly ordered an MRI of Mrs. Abrams' cervical spine which was performed more than eight hours later at approximately 6:18 p.m.  The reason for the order was "bilateral upper and lower extremity weakness."  The MRI was read and reported by Dr. Jaindl at 9:06 p.m.  Dr. Jaindl's impression was significant disc disease and encroachment at cervical vertebrae levels C3/4 through C6/7.

26.     At approximately 10:30 a.m. on Friday, April 6th, more than 24 hours after she was admitted, Mrs. Abrams was seen by Darnall medical provider, Dr. Holtkamp, a neurologist.  Dr. Holtkamp determined that Mrs. Abrams had acute progressive myelopathy which was a

"neurological emergency." Dr. Holtkamp noted that the MRI of the cervical spine performed on April 5th was "very concerning for possible bleed within the spinal column possible expanding hematoma." Dr. Holtkamp's plan was emergency transfer to a neurosurgery capable hospital.

27. Mrs. Abrams was transferred to Baylor Scott & White Health, a neurosurgery capable hospital, under the care of the Neurosurgery Department.

28. Mrs. Abrams was admitted to the surgical intensive care unit of Baylor Scott & White Medical Center at approximately 1:00 p.m. on Friday. Baylor Scott & White doctors noted on admission that Mrs. Abrams had been transferred to Baylor Scott & White because she had a "potential spine injury" and respiratory distress.

29. At 1:21 p.m. on Friday, April 6th, a Baylor Scott and White neurosurgery resident determined that Mrs. Abrams had lost the ability to move her lower extremities and some of her upper extremities. She was unable to feel light touch or pain below her cervical vertebrae level C5/C6. Baylor Scott and White's assessment was cervical stenosis with incomplete ASIA B spinal cord injury at C6. The Neurosurgery Department made no plans for surgical intervention on Friday. The Neurosurgery Department was planning for surgical intervention three days later on Monday.

30. At 4:54 p.m., a Baylor Scott and White radiology resident, read the CT exam of Mrs. Abrams' cervical spine and found that there was "prominent prevertebral edema especially at the C6-C7 level" which "may represent infectious or inflammatory process." The Neurosurgery Department made no plans for surgical intervention before Monday, and Mrs. Adams remained hospitalized on a ventilator over the weekend.

31. On Saturday, April 7th, a Baylor Scott and White resident noted that Mrs. Abrams had "acute onset paralysis 2/2 [secondary to] cervical stenosis and prominent prevertebral edema

8

of unknown current etiology." There still was no change in medical treatment, and no surgery was performed.

32.     Finally, on Monday, April 9th, Mrs. Abrams was taken to the operating room. According to the Operative Report, Baylor Scott & White's preoperative diagnosis was cervical stenosis and myelopathy, and the planned surgery was an anterior cervical fusion procedure. The Operative Report indicates that during the surgery, the surgeons encountered a prevertebral abscess (infection). Because there was an infection, the surgeons abandoned the cervical fusion procedure and converted to incision, drainage and washout of the infection. A Baylor Scott and White ENT surgeon was consulted during the surgery to evaluate the infection. He noted that the preoperative radiological imaging had "suggested a paraspinal/retropharyngeal inflammatory process."

33.     After discovery of the infection, Mrs. Abrams had several surgeries to wash out the infection surrounding the spinal cord. She was later sent to an inpatient rehabilitation hospital for therapies in an attempt to regain some mobility and function.

34.     Mrs. Abrams suffered irreversible neurological damage and permanent paralysis caused by the Defendants' delay in diagnosis and treatment of the infection. She is confined to a hospital bed and wheelchair. She is incontinent of bowel and bladder and suffers continuous debilitating pain. She requires 24 hour a day care and assistance with all activities of daily life and will for the rest of her life.

## VII.
## CLAIM FOR NEGLIGENCE AGAINST DEFENDANTS

35.     The Defendant, the United States of America, by and through its agents, apparent agents, employees, servants, and representatives undertook duties to provide proper medical care to Lucinda Abrams with the level of care, skill and treatment that is recognized as acceptable and appropriate by reasonable and prudent health care providers.

36.     Notwithstanding these duties undertaken by the Defendant, the United States of America breached the duties to Lucinda Abrams by engaging in at least the following acts or omissions which deviated from and fell below the accepted standards of medical care:

    a.     Failing to timely respond to Lucinda Abrams' developing and progressing neurologic symptoms;

    b.     Failing to timely diagnose and treat the spinal infection;

    c.     Failing to timely obtain a neurological/neurosurgical evaluation;

    d.     Failing to timely refer Mrs. Abrams to a hospital capable of decompressing, draining and performing a washout of the spinal infection; and/or

    e.     Failing to timely and adequately communicate the neurosurgical emergency to the referral hospital and/or medical providers to ensure timely surgical decompression, drainage, and necessary medical treatment.

37.     The negligent acts and/or omissions of the United States were a proximate cause of the delay in the timely diagnosis and treatment of the progressive spinal infection resulting in damage to Mrs. Abrams' spinal cord and permanent paralysis.  Had the United States of America's medical providers caring for Lucinda Abrams acted in accordance with the standard of care, the injuries to Lucinda Abrams and Jose Abrams would have been prevented.

38.     Defendant, Baylor Scott & White Health, acting by and through its employees, agents, apparent agents and/or representatives undertook duties to provide proper medical care to Lucinda Abrams with the level of care, skill and treatment that is recognized as acceptable and appropriate by reasonable and prudent health care providers.

39.     Notwithstanding these duties undertaken by the Defendant, Baylor Scott & White Health breached the duties to Lucinda Abrams by engaging in at least the following acts and/or omissions which deviated from and fell below the accepted standards of medical care:

    a.     Failing to timely and adequately communicate with the Darnall medical providers regarding Mrs. Abrams' neurosurgical emergency;

10

b.      Failing to timely respond to Lucinda Abrams' developing and progressing neurologic symptoms;

c.      Failing to timely diagnose and treat the spinal infection;

d.      Failing to timely perform a complete and adequate neurosurgical evaluation of Mrs. Abrams condition; and

e.      Failing to timely perform surgical decompression and drainage and provide necessary medical treatment.

40.     The negligent acts and/or omissions of Baylor Scott & White Health were a proximate cause of the delay in timely diagnosis and treatment of the progressive spinal infection resulting in damage to Mrs. Abrams' spinal cord and permanent paralysis. Had the Baylor Scott & White Health providers caring for Lucinda Abrams acted in accordance with the standard of care, the injuries to Lucinda Abrams and Jose Abrams would have been prevented.

41.     Defendants U. S. Radiology acting by and through its employee, agent, apparent agent, and/or representative, Dr. Jeffrey Jaindl, and Defendant Dr. Jaindl, undertook duties to provide proper medical care to Lucinda Abrams with the level of care, skill and treatment that is recognized as acceptable and appropriate by reasonable and prudent health care providers.

42.     Notwithstanding these duties undertaken by the Defendants, U.S. Radiology and Dr. Jaindl breached the duties to Lucinda Abrams by engaging in at least the following acts and/or omissions which deviated from and fell below the accepted standards of medical care:

a.      Failing to properly read, interpret, and report the actual findings of the radiological studies, including the MRI of Mrs. Abrams' cervical spine on April 5, 2018; and

b.      Failing to properly and timely report and communicate the actual findings of the radiological studies, including the MRI of Mrs. Abrams' cervical spine on April 5, 2018, to the neurologist and/or medical providers caring for Mrs. Abrams at Darnall;

11

43.     The negligent acts and/or omissions of U. S. Radiology and Dr. Jaindl were a proximate cause of the delay in timely diagnosis and treatment of the progressive spinal infection resulting in damage to Mrs. Abrams' spinal cord and permanent paralysis.  Had U.S. Radiology and Dr. Jaindl acted in accordance with the standard of care, the injuries to Lucinda Abrams and Jose Abrams would have been prevented.

### VIII.
### DAMAGES

44.     As a direct and proximate result of the Defendants' acts and/or omissions as set forth above, Lucinda Abrams sustained severe and permanent injury and damage to her spinal cord resulting in permanent paralysis and continuous debilitating pain with significant physical, mental, emotional, social, and economic limitations and damages.  These limitations and damages will continue throughout her lifetime.  The damages sustained by Lucinda Abrams include, but are not limited to, the following:

a.      Physical pain, suffering and mental anguish in the past and which will continue in the future;

b.      Physical impairment in the past and which will continue in the future;

d.      Disfigurement in the past and which will continue in the future;

d.      Medical, nursing, therapy, attendant care, and rehabilitation expenses sustained in the past and that, in reasonable probability, will be sustained in the future;

e.      Special adaptive living expenses sustained in the past and that, in reasonable probability, will be sustained in the future;

f.      Loss of consortium with her husband and children; and

g.      Other out-of-pocket expenses, economic losses, and pecuniary damages incurred as a result of Lucinda Abrams' injuries.

45.     As a direct and proximate result of the Defendant's acts and/omissions as set forth above, Jose Abrams has incurred medical expenses and other economic losses as a consequence

12

of Lucinda Abrams' injuries. Such economic damages have been incurred and will be incurred in the future on Lucinda Abrams' behalf. Those damages include, but are not limited to the following:

    a.    Medical, nursing, therapy, attendant care, and rehabilitation expenses for Lucinda Abrams sustained in the past and that, in reasonable probability, will be sustained in the future;

    b.    Special adaptive living expenses for Lucinda Abrams that have been sustained in the past and in that, in reasonable probability, will be sustained in the future;

    c.    Loss of household services of Lucinda Abrams, and

    d.    Other out-of-pocket expenses, economic losses, and pecuniary damages incurred as a result of Lucinda Abrams' injuries.

46.    As a direct and proximate result of the Defendants' acts and/or omissions as set forth above, Jose Abrams has also suffered loss of consortium with his wife in the past and which will continue in the future.

## IX.
## PRAYER FOR RELIEF

47.    WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that the Defendants be cited to appear and answer herein, that the Plaintiffs receive a judgment against Defendants for actual damages in an amount as the evidence may show is sufficient to compensate them for their injuries and damages, pre-judgment and post-judgment interest, costs, and all other and further relief allowed by the law and to which Plaintiffs are entitled to receive.

Respectfully submitted,

Laura Brown
State Bar No. 19238020
Dale D. Williams
State Bar No. 21523000
**Williams & Brown, L.L.P.**
Bridgeview Center, 2nd Floor
7901 Fish Pond Road
Waco, Texas 76710
(254) 741-6200
(254) 741-6300 (FAX)

And

Michael Archuleta
State Bar No. 00783555
**Archuleta Law Firm**
P. O. Box 340639
Austin, TX  78734
(512) 266-7676
(512) 266-4646 (FAX)